# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

June 2, 2016

**VIA ECF**

The Hon. Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Room 1340
New York, NY 10007

Re:   <u>Cruz v. Zucker, No. 14-cv-4456 (JSR) (GWG)</u>

Dear Judge Rakoff:

As directed by the Court on May 20, 2016, Plaintiffs respectfully submit this letter regarding new developments in the law that bear directly upon Plaintiffs' claims under § 1557 of the ACA,[1] which prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs or activities. (<u>See</u> Second Amended Complaint, Fifth Claim for Relief (ECF 114).) On May 13, 2016, HHS announced new regulations implementing § 1557 (the "ACA Regulations"), which were published in the Federal Register on May 18, 2016. 81 Fed. Reg. 31376 (<u>available at</u> https://www.federalregister.gov/articles/2016/05/18/2016-11458/nondiscrimination-in-health-programs-and-activities). As the ACA Regulations make clear, § 1557 prohibits discrimination in connection with the provision of transgender-related healthcare and thus confirm what Plaintiffs already demonstrated at summary judgment, namely, that § 505.2(*l*) violates the ACA by discriminating against Plaintiffs on the basis of their transgender status. Defendant's summary judgment motion on Plaintiff's Fifth Claim for Relief should therefore be denied.

**I.     Background.**

On August 28, 2015, Defendant moved for summary judgment on Plaintiffs' ACA claims, principally on legal grounds. Defendant argued that: (1) Plaintiffs do not fall "within the definition of a protected class under § 1557"; and (2) a sex discrimination claim under the ACA based on a disparate impact theory is not cognizable as a matter of law. (Def.'s Summ. J. Br. at 19, 22 (ECF 70); Def.'s Summ. J. Reply Br. at 10 n.6 (ECF 98).) Defendant's supplemental memorandum of law filed on May 13, 2016, reiterates his argument that the ACA does not support a disparate impact claim. (ECF 123 at 9 n.6.)

---

[1] Unless otherwise noted, capitalized terms and abbreviations have the same meaning ascribed in Plaintiffs' brief in opposition to Defendant's summary judgment motion (ECF 95).

Hon. Jed Rakoff

Plaintiffs' opposition to that motion refuted each of Defendant's arguments.  With respect to Defendant's protected class argument, for instance, Plaintiffs demonstrated that the prohibition against sex discrimination embodied in § 1557 does extend to discrimination against individuals on the basis of their transgender status, as numerous cases as well as interpretive guidance issued by HHS – which Defendant inexplicably ignored – make amply clear.  (See Pls.' Br. in Opp. Def.'s Summ. J. at 23-24 (ECF 95).)  Indeed, on July 12, 2012, HHS issued an opinion letter in which it expressly confirmed that "Section 1557's sex discrimination prohibition extends to claims of discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity and [we] will accept such complaints for investigation." (¶ 162.)[2] HHS repeated this position in multiple statements posted to the HHS website (see ¶¶ 163-65), as well as in its proposed regulations implementing § 1557 published in 2015.  See 80 Fed. Reg. 54172 (Sept. 8, 2015); Pls. Br. in Opp. Def.'s Summ. J. at 24.  Plaintiffs also argued that a sex discrimination claim based on disparate impact is in fact cognizable under § 1557, citing applicable case law in support.  (Id. at 25 n.13.)  Applying these legal principles, Plaintiffs showed that Defendant had violated the ACA by barring reimbursement of medical treatment sought by Plaintiffs that is authorized for the rest of the Medicaid population.  (Id. at 24-25.)

**II.   The ACA Regulations Require Denial of Defendant's Summary Judgment Motion.**

The arguments Plaintiffs marshalled in opposition to Defendant's motion for summary judgment apply with even greater force now that the ACA Regulations have been finalized.  As shown below, those regulations leave no room to doubt that Plaintiffs' interpretations of the ACA were correct, Defendant's interpretations were wrong, and that summary judgment in Defendant's favor cannot be granted.

*First*, Defendant's argument that the ACA's prohibition on sex discrimination does not extend to individuals with GD (Def.'s Summ. J. Br. at 22) was contrary to law prior to HHS's adoption of the ACA Regulations, and is now foreclosed.  The ACA Regulations define "on the basis of sex" to include "gender identity."  45 C.F.R. § 92.4 (available at 81 Fed. Reg. 31376, 31467).  The term "gender identity" is in turn defined as:

> an individual's internal sense of gender, which may be male, female, neither, or a combination of male and female, and which may be different from an individual's sex assigned at birth.  The way an individual expresses gender identity is frequently called "gender expression," and may or may not conform to social stereotypes associated with a particular gender. A transgender individual is an individual whose gender identity is different from the sex assigned to that person at birth.

Id.  Significantly, the ACA Regulations further provide specific protections with respect to the provision of healthcare to transgender individuals.  For example, HHS prohibits insurers from implementing "a categorical coverage exclusion or limitation for all health services related to

---

[2] Citations to "¶" refer to paragraphs in Plaintiffs' Opposition to Defendant's Local Rule 56.1 Statement of Material Facts, dated September 11, 2015 (ECF 93).

Hon. Jed Rakoff

gender transition." 45 C.F.R. § 92.207(b)(4) (available at 81 Fed. Reg. 31376, 31472). HHS also prohibits providers from denying or limiting coverage, or imposing "limitations or restrictions on coverage, for specific health services related to gender transition if such denial, limitation, or restriction results in discrimination against a transgender individual." Id. § 92.207(b)(5). The ACA's prohibition against discrimination "on the basis of sex" thus clearly includes discrimination against transgender individuals like the class members here, notwithstanding Defendant's argument to the contrary.

*Second*, the ACA Regulations likewise foreclose Defendant's argument that a disparate impact claim is not cognizable for sex discrimination under the ACA. (Def.'s Summ. J. Reply Br. at 10 n.6.) To the contrary, the ACA Regulations expressly state that § 1557 authorizes "a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in the legislation." 81 Fed. Reg. 31376, 31440.

These new legal developments leave no room for argument that Plaintiffs' ACA claims are foreclosed as a matter of law, as Defendant mistakenly contends. To the contrary, given the provisions of the ACA Regulations, the only issues now before the Court are purely factual in nature – e.g., whether Defendant has, by design or impact, discriminated against Plaintiffs in promulgating § 505.2(*l*) and whether Defendant acted with discriminatory intent. In Plaintiffs' submission, the record on those issues could not be more clear. The ACA Regulations expressly prohibit categorical exclusions on transition-related healthcare for transgender individuals because, as HHS has observed, although "[h]istorically, [insurers] have justified these blanket exclusions by categorizing all transition-related treatment as cosmetic or experimental[,] . . . such across-the-board categorization is now recognized as outdated and not based on current standards of care." 81 Fed. Reg. 31376, 31429; 45 C.F.R. § 92.207(b)(4) (available at 81 Fed. Reg. 31376, 31472). Yet that is exactly what Defendant has done here. As this Court has already held, § 505.2(*l*) "by its plain terms, *excludes* coverage for the procedures deemed 'cosmetic.'" Cruz v. Zucker, 116 F. Supp. 3d 334, 349 (S.D.N.Y. 2015) (emphasis added).

HHS has also made plain that, when examining whether a coverage restriction is discriminatory, the agency "will start by inquiring whether and to what extent coverage is available when the same service is not related to gender transition." 81 Fed. Reg. 31376, 31429. If such coverage is available, an insurer must provide a "neutral, nondiscriminatory reason for the denial or limitation that is not a pretext for discrimination." Id. at 31433. Here again, however, Defendant has done what the ACA prohibits. As Plaintiffs have already shown, while Defendant does provide coverage for the Deemed Cosmetic Procedures when sought for other diagnoses, it imposes unique and more rigorous requirements for those patients seeking the same treatment for GD. (See ¶¶ 286-94.) Indeed, we know of no instance in which Defendant has enumerated a list of procedures he has deemed to be "cosmetic," and thus non-covered, other than in § 505.2(*l*). This only confirms what Plaintiffs have already proved at summary judgment – that Defendant's characterization of essential forms of transgender care as "cosmetic," "presumptively cosmetic," and "experimental" is woefully outdated, contrary to unrebutted medical evidence, and prohibited by federal law. Although Defendant may claim his motives in promulgating these unique and more stringent requirements were pure, those claims cannot be taken at face value and should be resolved at trial.

Hon. Jed Rakoff

Finally, we note that the ACA Regulations would prohibit the coverage limitations proposed in Defendant's April 26, 2016 Notice of Proposed Rulemaking ("NPR"), if it were ever adopted. As Plaintiffs established in their May 6, 2016 letter to the Court, the changes proposed in the NPR would still violate the ACA because they would impose a presumption, *applicable only to transgender individuals*, against coverage of the Deemed Cosmetic Procedures, notwithstanding Defendant's admission that such procedures are medically necessary for some patients with GD. (Pls.' 5/6/16 Ltr. at 4-5 (ECF 117).)  Defendant thus has proposed to subject transgender individuals to a different and more restrictive coverage threshold for procedures that he knows are uniquely necessary to transgender healthcare under the guise that those procedures may be cosmetic for *cisgender* people, in some circumstances.  (Id. at 4-5; ¶ 276 (so-called "cosmetic" procedures "can have a radical and permanent effect on [a transgender person's] quality of life, and therefore is much more medically necessary than for somebody without [GD]"); see also 81 Fed. Reg. 31376, 31377 (purpose of ACA and § 1557 is "to expand access to care and coverage and eliminate barriers to access").)  This sort of disparate treatment violates the ACA.  Id. at 31435 (ACA requires insurers to "apply the same neutral, nondiscriminatory criteria that it uses for other conditions when the coverage determination is related to gender transition").  The ACA Regulations leave no doubt that Defendant has no basis in law or fact to assert that the NPR "moots" Plaintiffs' claims, or to seek a stay of the case pending the outcome of Defendant's "rulemaking process," which would only serve to replace one discriminatory regulation with another.  (See Def.'s 5/6/16 Ltr. at 1 & n.1 (ECF 118).)

***

Plaintiffs therefore respectfully request that the Court deny Defendant's motion for summary judgment, and grant any further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Mary Eaton

Mary Eaton

cc:     All Counsel of Record